And our next case for argument is Ohring v. Unisea. Good morning, may it please the Court, Derek Little on behalf of the appellant, Unisea. I'd like to reserve a couple of minutes at the end. I'd like to start off with the question of procedural unconscionability and then move on to the severance issues and the question of waiver. With respect to procedural unconscionability, I think there's no dispute that there's no evidence of any procedural unconscionability in connection with Mr. Ohring's decision to sign on for a second season with Unisea. Other than the fact that he was in Alaska and knew if he didn't sign it, he would be fired and he would have to pay the cost of getting from Dutch Harbor to Seattle. With respect, Your Honor, I think that applies to the first employment agreement. The second employment agreement, I think there's no dispute that Unisea would have paid his way to return to Seattle. So he made a decision to sign on for a second season. We really haven't seen any evidence of procedural. Could you speak up, counsel? Oh, I'm sorry. Keep your voice up. There's no evidence of procedural unconscionability with respect to his decision to sign that second employment agreement. And that second employment agreement incorporates by reference clearly and unequivocally the dispute resolution agreement, the DRA. And that agreement has a delegation clause, which, as we know, is analyzed separately. And that delegation clause delegates to the arbitrator any question of the validity of the DRA itself. So I think there's no evidence of procedural unconscionability with respect to that delegation clause. And, therefore, any of the other questions with respect to the substantive unconscionability of the DRA itself should have gone to the arbitrator for decision. I think a flaw with the district's court opinion in this case is its inconsistent treatment of the concept of incorporation by reference. The district court, first of all, seems to assume that the DRA was not incorporated by reference into the second employment agreement. It says that Mr. Oering only agreed once by signing to the DRA. And so in the first employment agreement, that seems to assume that there was no second agreement to the DRA. But then a couple of pages later, in a footnote, the district court says, well, in fact, the DRA was incorporated by reference into the second employment agreement. And that is why the short arbitration provision of the second employment agreement is substantively unconscionable, because it incorporates by reference the substantively unconscionable terms of the DRA. So I think the district court, in fact, is having it both ways, and it's not logically consistent. And I don't think that Mr. Oering has an answer to that flaw. And moreover, I think whichever way you come down on it, whether it is incorporated by reference or not, you're still going to end up in arbitration. If the DRA was incorporated by reference into the second employment agreement, there's no procedural unconscionability. Validity questions go to the arbitrator. If it was not incorporated by reference into the second employment agreement, then that short arbitration provision of the second employment agreement stands. In other words, there's no reason to say it's substantively unconscionable. The only way the district court found that it was substantively unconscionable was because it incorporated by reference the substantively unconscionable terms of the DRA, what the district court thought were substantively unconscionable terms. We disagree with that. So that, I think, is the sort of incurable problem with the district court's opinion. Is it your client's position there were some elements of the arbitration process that the person seeking arbitration had to pay for part of the cost, and it might come out of their salary, that they had to first address to an immediate supervisor their concerns before proceeding to arbitration? And I think there was a third. And at some point, your client said, we're not relying on those. Is that right? There were a number of terms that UNICE waived, and that was before UNICE brought its motion to compel arbitration. It was after the lawsuit was filed. It was before UNICE brought its motion to compel arbitration. It was before those terms were challenged by Mr. Oring in court. So I think the timing of that is important, and I think that's an important distinction. That leads to my question. Is it your client's position that the delegation clause, including the ones that your client disavowed, were incorporated into the second employment agreement? Our position is that they did. Irrespective of whether they later disavowed them or not, is it your client's position that when Oring signed the second employment agreement, all of the terms of arbitration, including the ones your client has disavowed, were incorporated? Yes. At that time, none of them had been waived. And so, yes, yes, that's absolutely right. I think the terms of the employment agreement are clear, that the parties are agreeing to arbitrate their disputes in the same manner as provided under the DRA, and it expressly incorporates the terms and definitions. And I know counsel for Mr. Oring has taken a different view of that, but I think that is plain and unequivocal incorporation of the entirety of the DRA. But just to be clear, UNICEF did not waive the delegation provision at any point. But I think the timing is important, because I think in Mr. Oring's briefing, he said that these provisions were waived after they were challenged in court, and that's not the case. This is a matter of chronology. That's not the case. These provisions were waived before the motion to compel was filed, and that's an important distinction, I think, with respect to the Gandhi case. In that case, the waiver, there was an offer of waiver that was made to the trial court, an offer to waive the venue provision in Orange County, and the Supreme Court in Gandhi said that that was arguably a legitimate offer. What was not legitimate was to wait until the appellate reply brief before the Washington Supreme Court and then to say, if there's a provision in here that offends the court, we're waiving it. That, you know, I think that's the message of Gandhi, that that is waiting too long. But that's a different procedural setting than the one presented in our case. Well, it's probably one of degree, right? Because the company waived the provisions after the lawsuit had been filed and just before it moved to compelled arbitration. So it's not as though it happened entirely outside the context of knowing we have a dispute going on and this arbitration provision is going to become relevant in a very practical way. That is true. You're correct on the chronology. But I think it's a much later waiver in the Gandhi case. And I think the court in Gandhi did say that the waiver offer that was made to the trial court or the venue provision was arguably legitimate. This was an offer that was made not to a court but to the UNICE employees before there was a challenge. And that waiver was across the board or was it just for this employee? It was to all the UNICE employees. Was it communicated by some kind of a letter or document with the employee signature going forward? Or how was it communicated? It was communicated. I think it was communicated by e-mail. Those offers are in the excerpts of the record at page 147 and 149. Thank you. Do you want to address severability if we disagree with you that the second employment agreement incorporated the DRA? We're going to have to deal with the unconscionability issues. Yes. Yes. Thank you, Your Honor. I'd be happy to deal with severability. So, you know, I think severability, the basic rule is that severability is the favored, preferred way of addressing terms that the court finds unconscionable. In the Zuver v. Airtouch communication case, the Washington Supreme Court says that, you know, let's see if I can find the quotation, courts are loathe to upset the terms of an agreement and strive to give effect to the intent of the parties, especially where the agreement contains a severance clause. So it's only where an agreement is permeated or is pervaded by unconscionable clauses that the court would deny severance. We took issue with the approach of the district court in this case, where it just sort of tallied up three provisions that it found to be unconscionable and then added on a couple more that it didn't even find to be unconscionable. But just because Unicey had waived them, it added those on and got up to a total of five. And we just did not find any authority where a court has used this sort of very simplistic, with respect to a very mechanistic methodology for evaluating whether an agreement is permeated with unconscionable terms. We believe the correct standard was articulated by the Washington Supreme Court in the Gandy case, where it said that the standard for judging whether an agreement is permeated with unconscionability is whether severing those terms would affect a significant alteration in both the tone of the arbitration clause and the nature of the arbitration. That is the correct standard. The correct standard is not to do a simple tally of terms. And Mr. Orange Counsel cited a couple of cases where the Washington Supreme Court did, in fact, take a numerical approach to the severance analysis. But in those cases, those were the Adler v. Fredlund Manor and Zuber v. Airtouch Communications. In both of those cases, severance was permitted. I think that's a really important distinction. If you're going to go ahead and grant severance, you can say, yes, this is only two or three clauses. That's not going to permeate an agreement. But if you want to deny severance, our position is that you need to actually look at what would be the effect of severing and whether that would have a significant effect. It would significantly alter both the tone and the nature of the arbitration. And once you've made that determination, then you can deny severance. It's not just a matter of adding up terms in that kind of mechanistic way. You want to save the balance of your time for rebuttal? Yes. Thank you. Good morning, Your Honors. May it please the Court. My name is Julie Erickson. I represent Appellee Amikai Oring. The Court should affirm the District Court's order denying UNICEF's motion to compel arbitration for three reasons. The District Court correctly found there was no valid agreement to arbitrate arbitrability. In doing so, the District Court did not engage in any logical flaw. But rather correctly concluded that the stand-alone employment contract signed by Mr. Oring in December of 2020 did not constitute a secondary agreement to the delegation provision, which was located only in the DRA. Having determined there was no valid delegation, the District Court correctly proceeded to rule on Mr. Oring's substantive unconscionability arguments, finding three terms to be substantively unconscionable, including the unilateral termination provision. Finally, the Court found, on two well-recognized grounds, that the unconscionability permeated the entire arbitration agreement and exercised his discretion in declining to sever those terms. This decision is reviewed by this Court under the deferential abuse of discretion standard. As the District Court was well within its discretion in declining to sever these terms, the Court should affirm. As to the first issue of delegation, the District Court correctly found that the only time Mr. Oring agreed to the delegation provision was in August, when he signed the DRA. However, the circumstances surrounding that signing in August were so coercive and oppressive that they warranted a finding from the District Court that they were procedurally unconscionable, that they had deprived Mr. Oring of any meaningful choice in signing, and that he did not have an opportunity to review those documents. The District Court then correctly found that by signing just the December employment contract, Mr. Oring did not agree a second time to the delegation provision specifically. And that's the crux of this case, right? I mean, that's the key that I think is going to dictate the outcome here. And so you've got this statement in that second employment contract that expressly references the DRA and says that we're going to resolve all of our disputes in the manner set forth in that document. How is that not incorporation? Thank you, Your Honor. I think you've absolutely identified the key issue here is the delegation and the incorporation by reference argument. First is the threshold matter. This is a new argument that was advanced only at the appellate level. UNICEF cites to a few pages in their District Court briefing supposedly addressing this argument, but if you actually look at those pages, it doesn't acknowledge in any way its burden of proof on an incorporation by reference argument. And regardless, the exception for pure issues of law doesn't apply here, because if they had made this argument at the District Court level, the factual record may well have been further developed as to other circumstances surrounding the December execution. But getting to, Your Honor. What could those factual circumstances be? I mean, it's not disputed that your client signed that second employment agreement. It's not disputed what that second employment agreement says. So what further factual record do we need to figure out whether this incorporation happened or not? Your Honor, I would suggest that evidence as to whether Mr. Oering had access to the DRA when he was asked to sign the employment agreement. The record right now is devoid of any evidence that Mr. Oering had the DRA or had access to it or was told how he might reference that DRA in evaluating and reading the employment contract. But even if the argument is entertained, getting to the heart of the dispute, it's more when we're looking at the specific language of the employment contract. What the actual agreement here is, is not a clear-cut incorporation by reference of the DRA in total. Rather, what is being agreed to in the employment contract is an agreement to resolve all cover disputes in the manner set forth in the DRA. It's an agreement to resolve cover disputes in the manner set forth in the DRA. So what we look to for the DRA in terms of what information is being provided by the DRA as informing that agreement agreed to in the employment contract, we're looking at the definition of cover disputes and the manner in which those cover disputes are resolved. Arbitrability, questions of arbitrability, to the extent they are validly delegated, are not cover disputes. Moreover, they are resolved in a process that's different than that by which cover disputes are resolved. To cut through the abstraction of that statement, cover disputes are resolved via three steps. There's a heading in the DRA that says, all cover disputes must be resolved using the steps below. There's three steps, the first two of which are informal resolution attempts, the third step being arbitration. UNICE took the position at the district court level that questions of arbitrability were distinct from cover disputes concerning the terms and conditions of employment and that they were not subject to the first two steps of that three-step series. Rather, they would jump straight to step three. So by agreeing to resolve cover disputes in the manner set forth for cover disputes, it doesn't follow that Mr. Oring also agreed to resolve some other set of disputes through some other manner, neither of which is referenced in the employment contract. What would be uncovered disputes in your view? Is it the question of arbitrability itself? Are you saying that's the uncovered dispute? Yes, Your Honor. Or am I misstating that? I would contend that whatever questions of arbitrability might be encompassed by the sentence that UNICE points to as being the quote-unquote delegation provision, that those disputes, according to their own position, are distinct from cover disputes and are subject to a different process. So on both fronts, the agreement that's being made through the employment contract does not cover resolution of questions of arbitrability through some other process. At a minimum, I would urge the Court to find that that is at least a reasonable interpretation. The inclusion of the phrase at the end, the terms and definitions of which are incorporated herein, doesn't change this conclusion. As we've laid out in our brief, there's a legal distinction between the phrase terms and definitions and terms and conditions. And UNICE itself used both of those phrases in the same document. In the employment contract, the prefatory sentence on the first page talks about that the document is setting forth the terms and conditions relative to employment. Yet later, they used the phrase terms and definitions when referring to what is being incorporated by reference. Isn't that just an example of sort of the redundancy that it's everywhere in the law, null and void and all of those, you know, as long as the word terms is there, what's the discrepancy? Terms covers everything that's in the agreement, right? Well, the case law suggests that when it's used together, terms and definitions, that there is a distinction. And I think especially the fact that they used terms and conditions within the same document implies that there is a difference. Even just reading it through just a reasonable interpretation, when you're, again, looking at this sentence of what's being referenced of the DRA, it's what's the definition of cover disputes so that I can understand what I'm agreeing to resolve here, cover disputes. And that the agreement is to resolve those cover disputes in the manner set forth in the DRA, comma, the terms and definitions of which are incorporated herein. I think a very reasonable way to read that is that it's talking about defined terms and their definitions. There's a, under Washington state law, where a referenced matter is incorporated for a specific purpose, it's incorporated for that specific purpose only and irrelevant as to all others. And that's the Feral Gus case that I can give you the site for. I want to make sure I'm understanding, because I think your argument today is a little bit different than I understood it based on the briefing. Your argument is then that to the extent incorporation happened, it only incorporated the methodology for resolving covered disputes, that defined term, and then the defined terms. And if anything in the DRA falls outside of the scope of those two things, that's not incorporated. Is that your argument? Yes, Your Honor. It's also important to view this through the context of what's being supposedly agreed to here. We're talking about an agreement to arbitrate arbitrability. And when, in the context of delegation provisions, the U.S. Supreme Court has said that there is a heightened standard. Your typical pro-arbitration policy is actually reversed. There's a heightened standard on the party seeking to enforce an agreement to arbitrate arbitrability that they show there's evidence of, there's clear and unmistakable evidence of the party's intent to arbitrate these threshold issues. And imposing that heightened standard, they said it was required because, first, of the significance... That heightened standard, everything you're telling us, is this from Rent-A-Center or is this from other... This is from First Options of Chicago v. Kaplan, Your Honor. And they recognize the significance of having an arbitrator self-determine the extent of their own powers. And they recognize that a party would not likely believe that an arbitrator would be deciding those issues. Rather, they would reasonably believe that a judge would be deciding those issues. So I haven't recently read the case that you just referenced, but recent case law from the Supreme Court tells us that a delegation provision is just another agreement to arbitrate, and we treat it like other agreements. Yes, we need evidence of clear intent that that was the agreement, but it is just another agreement of arbitration. So how is that consistent with the argument that you're making? Your Honor, I think the heightened standard, the clear and unmistakable test for delegation provisions is good law. That is still the test. And I'm not aware of a Supreme Court case that has undercut the thrust of that test. I'm referencing Rent-A-Center and the Henry Schein case. There's nothing in those two opinions that indicates to me that delegation provisions are somehow disfavored and that we need some, you know, very high threshold to conclude that the parties reached such an agreement. It just says they're a separate agreement. We need to make sure there's evidence that such an agreement actually happened. But that's what I'm referencing. Yes. In Rent-A-Center, they didn't actually look at the validity of the delegation provision. They were looking more at whether it had been specifically challenged and whether it was unconscionable. But the Supreme Court law that where there are ambiguities as to an agreement to arbitrate arbitrability, those ambiguities must be resolved in favor of judicial determination. And so in this case here, we have not one but two levels of ambiguity, one posed by the language of the delegation provision itself and the fact that it's far from clear and unmistakable that it would encompass all questions of arbitrability. And number two, that by signing the employment contract as a stand-alone document, that that manifests a clear and unmistakable intent to arbitrate arbitrability. UNICE is the drafting party here. They were in control of what words they used. They chose to use words and language that were susceptible to multiple interpretations. If it's reasonable to interpret either of these clauses in more than one way, then by definition, they're ambiguous. And by definition, according to that Supreme Court standard regarding a pro-court presumption, those ambiguities have to be resolved in favor of judicial determination. And one final point about the importance of viewing the validity of delegation provision through the eyes of the—through Mr. Oering. The Supreme Court, again, has said that we should consider the perspective of the parties to the particular contract at issue. So Mr. Oering's view of the employment contract as a stand-alone document. Here today, we have the benefit of looking at both of these contracts side-by-side and cross-referencing. Mr. Oering didn't have that benefit. Again, there's no evidence that he had a copy of the DRA or had access to or was told where he could find it. It makes this very different than other cases where, say, the AAA's rules are incorporated by reference. There's almost always a link to where they can find those rules or other information about, you know, go here if you have questions. There was no evidence that Mr. Oering had any access at that point to the DRA. The only evidence we have as to his experience and exposure to that DRA was in August under circumstances that were so coercive they were deemed to have deprived him of an opportunity to review and deprived him of a meaningful choice. As my time is coming quickly to an end, I would urge the Court, again, just to find that if either of these layers of ambiguity exist, that forecloses a meeting of the clear and unmistakable test. Because there was no valid delegation here, the District Court correctly moved on to analyze the substantive unconscionability arguments, found there were three valid terms. There was some discussion during my colleague's presentation about Gandhi and the offer to waive, and I'm happy to address those points. I know that Judge Forrest, you, I think, correctly identify the issue of most importance here. One quick note. Gandhi looked at not whether the waiver was made at the appellate court level. It looked at whether that waiver was made post-litigation. And as Judge Forrest pointed out, the offer to waive was made after this lawsuit was filed and a matter of days before the motion to compel arbitration was filed. So it was clearly a litigation strategy. The reference to an arguably legitimate waiver was specific to the Zuber exception for cost-splitting provisions, so that's not a basis to find that there was some importance of the waiver happening at the trial court level as opposed to the appellate court level. In conclusion, I would ask the Court to affirm the District Court's order, finding no valid delegation of arbitrability questions, and affirm the District Court's order. Thank you. Thank you. Counsel? Yes. If a supervisor of UNICEF physically assaulted Mr. Oering while at sea, toss him overboard. Would that be a covered item? I think it would be. I think covered disputes under the – I'd have to look at the – I think covered disputes is any employment-related dispute, and it's a very long definition. He would have to submit a wrongful – or his estate would have to submit a wrongful death proceeding to arbitration? You know, I hadn't considered your hypothetical. I think I'd have to go back and reread the definition of covered disputes. You might argue that's not employment-related, that's criminal-related. That's a good suggestion. Yeah, it might be beyond the scope of this question. At least at the moment I asked you that question, you were unclear. I'm unclear because the definition of covered disputes is quite extensive and it has many clauses which I haven't committed. It might even be ambiguous. Well, I don't think in this case it's ambiguous in a material way because it definitely covers issues relating to wages and compensation. So I think it – we're clearly within the realm of a covered dispute. If I could just briefly address some of the points that were raised. The last point that Counsel for Mr. Oering raised was regarding the arguably legitimate waiver that was made to the trial court, and that had to do with the venue. That was an Orange County venue provision that was waived. It was not a cost-sharing waiver. So I just want to clarify that point for the record. Counsel also talked about an abusive discretion standard for the severability question, and that – I haven't found any evidence that that's the applicable standard in Washington. It is in California, and this court has recognized that that's the standard in California. But in terms of Washington cases, the Zuber, Gandy, Adler cases, they all look at severability de novo in common with all of the issues related to enforceability. So I don't think we're under abusive discretion. Whether this is a reviewable issue, this is clearly an issue that the incorporation, by reference, whether that's reviewable, that that was something that the district court considered and put into its decision. It's been fully briefed by the parties. So I think this is clearly an issue that this court can review. I have a question. As I understood it, your client, your opponent, argued that you didn't raise the incorporation issue before the district court. Is that correct? I don't think that is correct. I think we did not use those – Well, you can check the record and see. But your understanding is that it was raised. I think it was raised in the sense that we said that when he agreed to the second employment agreement, he was, in effect, agreeing to resolve his disputes pursuant to the DRA. And so when one agreement effectively commits you to a second agreement, I think that's the very meaning of incorporation by reference. So I think we did raise it, and the court based its decision on that concept. The parties have fully briefed the concept. So I think it is clearly presented to this court for its review. Any further questions from my colleagues? Thank you for your argument. Thank you.
judges: Boggs, HAWKINS, FORREST